**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**EASTERN (WATERLOO) DIVISION**

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

KELLY LEONARD JACOB,

    Defendant.

No. CR 07-2017-MWB
No. CR 07-2002-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING SENTENCING**

_____

## TABLE OF CONTENTS

**I. INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    **A. Charges And Pleas** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    **B. Offense Conduct** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    **C. The Defendant's Personal Characteristics** . . . . . . . . . . . . . . . . . . 8
    **D. Sentencing Proceedings** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**II. LEGAL ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    **A. The Methodology For Determination Of A Sentence** . . . . . . . . . . . . 13
    **B. Application Of The Methodology In Beiermann** . . . . . . . . . . . . . . 14
        **1. Step 1** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
        **2. Step 2** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        **3. Step 3** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
    **C. Application Of The Methodology To Jacob** . . . . . . . . . . . . . . . . . 19
        **1. Step 1: Determination of the guideline range** . . . . . . . . . . . 19
        **2. Step 2: Determination of whether to depart or vary** . . . . . . . 23
        **3. Step 3: Application of § 3553(a) factors** . . . . . . . . . . . . . . 29
            **a. The nature and circumstances of the offense** . . . . . . 30
            **b. The history and characteristics of the defendant** . . . . . 32
            **c. The need for the sentence imposed** . . . . . . . . . . . . . 34

        **d.**       *The kinds of sentences available and the sentencing ranges for similar offenses* . . . . . . . . . . . . . . . . . . . 36

        **e.**       *Any pertinent policy statement* . . . . . . . . . . . . . . . . 38

        **f.**       *The need to avoid unwarranted disparities* . . . . . . . . 39

        **g.**       *The need to provide restitution* . . . . . . . . . . . . . . . . 43

    **4.**       *Summary and concurrent sentence calculation* . . . . . . . . . . 43

**III. CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

Defendant Kelly Leonard Jacob came before me for a sentencing hearing on April 14, 2009, and for imposition of sentence on June 26, 2009, on his guilty pleas to charges, in two indictments, of using the Internet to entice a minor to engage in sexual activity prohibited by state law and interstate transportation of child pornography. Recognizing that I categorically rejected one "child pornography" sentencing guideline otherwise applicable here, U.S.S.G. § 2G2.2, in *United States v. Beiermann*, 599 F. Supp. 2d 1087 (N.D. Iowa 2009), defendant Jacob moved for a downward variance from his advisory guideline sentencing range on the ground that another "child exploitation" guideline, U.S.S.G. § 2G2.1, suffers from similar infirmities and that the advisory guideline sentencing range in this case is excessive under 18 U.S.C. § 3553(a). Also recognizing my prior categorical rejection of U.S.S.G. § 2G2.2, the prosecution acknowledged that I was likely to reject that guideline again, and conceded that some downward variance was appropriate in this case, but argued that U.S.S.G. § 2G2.1 does not necessarily suffer from the same infirmities as U.S.S.G. § 2G2.2, so that a sentence within the guideline range established by U.S.S.G. § 2G2.1, and disregarding U.S.S.G. § 2G2.2, is appropriate in this case. I now enter this written explanation of my

rationale for a sentence tailored to defendant Jacob's circumstances in light of the applicable guidelines and 18 U.S.C. § 3553(a) factors.

## I. INTRODUCTION

### A. Charges And Pleas

On June 8, 2007, a Grand Jury in the Northern District of Iowa handed down an Indictment in Case No. CR 07-2017-MWB (the Iowa Indictment), charging defendant Kelly Leonard Jacob with three offenses. **Count 1** charges that, from on or about June 24, 2007, until on or about July 21, 2007, in the Northern District of Iowa and elsewhere, defendant Jacob, using a facility and means of interstate and foreign commerce, namely, the Internet, knowingly attempted to persuade, induce, entice, and coerce a person that he believed to be under the age of sixteen to engage in sexual activity for which a person could be charged with criminal offenses under the laws of the State of Iowa, that is, IOWA CODE § 709.4(2)(c)(4), sexual abuse in the third degree, all in violation of 18 U.S.C. § 2422(b) (the Iowa enticement offense). **Count 2** charges that, on or about July 13, 2007, in the Northern District of Iowa and elsewhere, defendant Jacob knowingly transported and attempted to transport in interstate commerce a visual depiction of a minor engaging in sexually explicit conduct, all in violation of 18 U.S.C. § 2252A(a)(1) and (b)(1) (the Iowa transporting child pornography offense). **Count 3** charges that, on or about July 21, 2007, in the Northern District of Iowa and elsewhere, defendant Jacob knowingly traveled in interstate commerce from Minnesota to Black Hawk County, Iowa, for the purpose of engaging in sexual acts in violation of IOWA CODE § 709.4(2)(c)(4), sexual abuse in the third degree, with a person that he believed to be under the age of sixteen, all in violation of 18 U.S.C. § 2423(b) (the Iowa interstate travel offense).

3

On November 29, 2007, defendant Jacob consented to the transfer to this court from the Middle District of Florida a July 26, 2007, Indictment (the Florida Indictment), which was assigned available Case No. CR 07-2002-MWB in this district. The Florida Indictment charges defendant Kelly Leonard Jacob, a/k/a "jewman_19," a/k/a "kljacob19," a/k/a "kelly jacob," with two offenses. **Count 1** charges that, from on or about January 24, 2007, through on or about March 28, 2007, at Jacksonville, in the Middle District of Florida, in the District of Minnesota, and elsewhere, defendant Jacob, by means of a facility of interstate and foreign commerce, that is, by computer via the Internet, knowingly and intentionally attempted to persuade, induce, entice, and coerce B.S., a person whom he believed had not attained the age of 18 years, to engage in sexual activity for which a person could be charged with criminal offenses under the laws of the State of Florida, that is, the crime of lewd or lascivious conduct on a person less than 16 years of age, in violation of Section 800.04, Florida Statutes, and the crime of promotion of sexual performance by a child less than 18 years of age, in violation of Section 827.071(3), Florida Statutes, all in violation of 18 U.S.C. § 2422(b) (the Florida enticement offense). **Count 2** of the Florida Indictment charges that, on or about February 1, 2007, at Jacksonville, in the Middle District of Florida, in the District of Minnesota, and elsewhere, defendant Jacob knowingly transported and shipped in interstate and foreign commerce, by any means, including by computer, visual depictions, the production of which involved the use of minors engaging in sexually explicit conduct, which visual depictions were of such conduct, all in violation of 18 U.S.C. § 2252(a)(1) and (b)(1) (the Florida transporting child pornography offense). The Florida Indictment also included a forfeiture allegation concerning property used to commit or promote the commission of the charged offenses.

On January 10, 2008, defendant Jacob entered pleas of guilty, pursuant to a plea agreement, to **Counts 1** and **2** of the Iowa Indictment (the Iowa enticement and transporting child pornography offenses) and **Count 1** of the Florida Indictment (the Florida enticement offense) before a magistrate judge of this court. Jacob's plea agreement provided that, in exchange for his guilty pleas to the counts identified, the prosecution would dismiss all remaining counts (the Iowa interstate travel offense and the Florida transporting child pornography offense) and would not file any additional charges based on the information in its possession. On January 10, 2008, the magistrate judge filed a Report and Recommendation (docket no. 24 in Case No. CR 07-2017-MWB; docket no. 13 in Case No. CR 07-2002-MWB) recommending that I accept Jacob's guilty pleas, which I did by Order (docket no. 25 in Case No. CR 07-2017-MWB; docket no. 14 in Case No. CR 07-2002-MWB) dated January 25, 2008.

### B. Offense Conduct

This description of defendant Jacob's offense conduct is drawn primarily from the Presentence Investigation Report (PSIR).

On January 24, 2007, an investigator with the State of Florida Attorney General's Office, Child Predator Cyber Crime Unit, logged into a Yahoo! computer "chat room" using an undercover computer located in Jacksonville, Florida, for the purpose of investigating individuals involved in the distribution and receipt of child pornography. The investigator was posing as a 13-year-old female from Florida and was using a particular screen name that identified the investigator as such. On January 24 and 29, 2007, February 1, 12, and 19, 2007, and March 9, 19, and 28, 2007, the investigator was contacted by defendant Jacob, identified by various user names stated in the Florida Indictment, in "chat rooms" and through instant messages. In the course of these various

contacts, defendant Jacob identified himself as a 22-year-old male from Minnesota and, *inter alia*, asked if the supposed 13-year-old female wanted to have sex; suggested that the supposed 13-year-old female have sex with "her" fictional 11-year-old brother, and instructed the supposed 13-year-old female, in detail, how to engage in sexual conduct with "her" brother; described sex acts that he wanted to perform on the supposed 13-year-old female or that he wanted "her" to perform on him; sent live video by webcam of himself masturbating on several occasions, occasionally showing his face; sent the supposed 13-year-old images of child pornography (five on one occasion); and indicated his desire to come to Florida to have sex with the supposed 13-year-old female. The Florida investigator obtained a subpoena for subscriber information from Yahoo! and from Embarq for electronic "chats," which led the investigator to defendant Kelly Leonard Jacob at his address in Plainview, Minnesota. As Jacob points out, there is no evidence that he ever made any actual attempt to go to Florida to meet the supposed 13-year-old female, nor is there any evidence that he ever sent the supposed 13-year-old female computer hardware or other equipment to create pornographic images of herself to send to Jacob.

From June 24, 2007, to July 21, 2007, defendant Jacob also had several online Internet "chat" conversations with an undercover investigator in the Northern District of Iowa posing as a 15-year-old female. In those "chats," Jacob enticed the supposed 15-year-old female to engage in illicit sexual conduct, including sexual intercourse; masturbated while in front of his webcam; and repeatedly asked the supposed 15-year-old female if "she" would pose naked for him, acknowledging that he would be in trouble if anyone learned that he had such photographs, and promising to keep such photographs to himself and not to post them on the Internet. On July 13, 2007, Jacob also sent the supposed 15-year-old female in Black Hawk County, Iowa, via the Internet, a visual depiction of a minor engaging in sexually explicit conduct, specifically, a photograph

depicting a 15-year-old female and a male penis. The investigator received from defendant Jacob a total of 49 images, one of which was an image of child pornography, 46 of which were images of adults portraying children engaged in sexually explicit conduct (child erotica), and two images that were not pornographic.

On July 21, 2007, defendant Jacob traveled from Minnesota to Black Hawk County, Iowa, for the purpose of engaging in sexual acts, including sexual intercourse, with the supposed 15-year-old female. Jacob had agreed with the supposed 15-year-old female that he could take photographs of their sexual encounters and of the supposed 15-year-old female alone. When arrested, defendant Jacob admitted that he was in Iowa to have sex with a person that he believed to be 15 years old, and law enforcement officers seized from his vehicle a digital camera, six condoms, and tube of personal lubricant. I find that, had the supposed 15-year-old female been a real child, Jacob had every intention of having sex with her and would have done so.

In a recorded interview on July 21, 2007, defendant Jacob initially denied that child pornography could be found on his computer, but later admitted that he had approximately 100 images and 10 to 15 videos of child pornography on his computer, including images of children ages 5 to 17 engaged in sex acts. A forensic examination of defendant Jacob's computer revealed approximately 40 stored images and more than 10 stored videos of child pornography, which included visual depictions of prepubescent females engaging in sexual intercourse with and performing oral sex on adult males. Investigators have not identified any of the minors depicted in the images in question.

## C. The Defendant's Personal Characteristics

This description of defendant Jacob's personal characteristics is also drawn from the PSIR, supplemented by the report of the court's expert, Craig B. Rypma, Ph.D. and MBA, a licensed clinical psychologist, who interviewed and tested the defendant.

Defendant Jacob was 23 years old at the time of the offenses charged in these cases. He grew up in and around Rochester and Plainview, Minnesota. His parents had divorced when he was 8 years old, and he initially lived with his mother after the divorce. However, his father was awarded custody of both the defendant and his brothers when the defendant was 12 years old, apparently because his mother was an alcoholic who was then abusing alcohol. Jacob reports a good relationship with his father and brothers and also with his mother after she stopped abusing alcohol. Jacob reports that he was never abused. Prior to his arrest, Jacob was living with his father and one brother in Plainview, Minnesota. Although he reports no past or present mental or emotional health concerns, he does admit that he began drinking alcohol at the age of 10, and continued to drink alcohol to the point of intoxication regularly from the time he was 17 until he was 23. He also used marijuana regularly from the age of 13, but quit smoking marijuana at age 19, because he no longer enjoyed it. Thus far, he has not participated in substance abuse or alcohol treatment, but he believes that he has a problem with alcohol and would benefit from alcohol treatment.

Jacob graduated from high school in 2003, and completed 24 college credits in 2005 and 2006 at Rochester Community College, where he was studying psychology. He also reports that he is a certified forklift operator, but that his certification will expire soon. Jacob was employed with High Plains Coop in Plainview, Minnesota, from May 2002 to May 2005, as a cashier at $7.25 per hour. He was employed at Best Buy in Rochester, Minnesota, from August 2005 until May 2006, at $8.25 per hour working in merchandise.

Finally, he was employed with Chosen Valley Testing in Rochester, Minnesota, from 2006 until his arrest in July 2007, testing soils and concrete at $9 per hour. His earnings records with the Social Security Administration indicate that he earned anywhere from $2,000 to $11,000 annually between 2002 and 2006.

In his Risk Evaluation of defendant Jacob, dated May 24, 2008, Dr. Craig Rypma found no disturbances in defendant Jacob's mental status. Dr. Rypma notes that defendant Jacob reported that his first sexual intercourse occurred with a 17-year-old female partner when Jacob was 21; that he has had four sexual partners in his lifetime, one of which was in the context of a "committed relationship" of two months duration; that he denies homosexual interests or acts, and identifies himself as heterosexual, although he admits some minor sexual identity confusion and some homosexual activity on video cams with age-appropriate men, including masturbation; that he admits that he has used pornography, both on the Internet and purchased, to enhance sexual arousal; and that he denies that he has ever paid for sex. Dr. Rypma found no apparent paraphilias and no history of medical or psychiatric treatment. Dr. Rypma also noted that defendant Jacob reported that his computer contained images of underage females, ranging in age from 5 to 17, some of whom were involved in sexual activities, but he denies sadomasochistic interests and denies that images depicting such themes were included on his computer. Dr. Rypma found that defendant Jacob demonstrates no overt hostility directed at law enforcement personnel or others involved in his arrest or prosecution and that he appears to have assumed accountability for the crimes with which he is charged. Dr. Rypma's diagnostic impression of defendant Jacob, after various tests and diagnostic interviews, is adjustment disorder with disturbance conduct on axis I; adult antisocial behavior on axis II; no disorders by self-report on axis III; problems related to interaction with the legal system on axis IV; and deferred diagnostic impressions on axis V.

In his summary and recommendations, Dr. Rypma finds that results of his evaluation of defendant Jacob suggest intimacy deficits, with no evidence of any degree of emotional identification with children, but also no demonstration of hostility toward women; that defendant Jacob appears to have social support available from his family members, although the nature of his social support network outside of his family is not well established; that he has been cooperative during his confinement, although he has no prior experience with supervised release; that he displayed no overt signs of hyper-sexuality or poorly controlled sexual behavior during his time of confinement; that his difficulty in regulating his prior sexual behavior does not appear to have been a general trait characterizing his overall behavior; and that he has not had difficulty in the area of general self regulation. Dr. Rypma finds that Jacob "has not demonstrated an ongoing, let alone intense urge for underage children according to this record." Dr. Rypma's Risk Evaluation at 8.

Dr. Rypma concludes his Risk Evaluation as follows:

> In conclusion, Mr. Jacobs [sic] is not likely to engage in future acts of predatory sexual violence. Based on this evaluator's review of the records, interview, and on the knowledge that Mr. Jacobs will be supervised upon release, it is my opinion to a reasonable degree of professional certainty, that Mr. Jacobs currently does not pose a serious risk for predatory sexual violence. He does however need to complete a formal SOTP [Sexual Offender Treatment] program; his understanding of his offense is limited and his social skills are such that he is likely to benefit from referral to such a program.

Dr. Rypma's Risk Evaluation at 8.

### D. Sentencing Proceedings

After various continuances, some of which were to permit the assessment of defendant Jacob by Dr. Rypma, defendant Jacob's sentencing hearing was set for April 14, 2009. Prior to that hearing, on November 10, 2008, defendant Jacob filed a Brief In Support Of Request For Variance (docket no. 45 in Case No. CR 07-2017-MWB; docket no. 29 in Case No. CR 07-2002-MWB), asserting that the court should disregard the advisory guideline sentence calculation as inconsistent with the directives of 18 U.S.C. § 3553(a) and that a sentence "close to" the statutory mandatory minimum of 120 months is appropriate in this case. The prosecution responded with a Sentencing Memorandum (docket no. 46 in Case No. CR 07-2017-MWB; docket no. 30 in Case No. CR 07-2002-MWB), filed November 13, 2008, urging the court to adopt the guideline sentencing recommendations contained in the PSIR. The prosecution also filed a more specific Response To Defendant's Request For Variance (docket no. 48 in Case No. CR 07-2017-MWB; docket no. 32 in Case No. CR 07-2002-MWB), filed March 6, 2009, arguing, *inter alia*, that many of the reasons that the court rejected U.S.S.G. § 2G2.2 in *United States v. Beiermann*, 599 F. Supp. 2d 1087 (N.D. Iowa 2009), are not applicable to guidelines at issue in this case, but acknowledging that, in light of the court's rejection of U.S.S.G. § 2G2.2, the enhancements to defendant Jacob's advisory guideline sentence based on U.S.S.G. § 2G2.2 would likely be disregarded, resulting in an alternative guideline range of 292 to 363 months based, *inter alia*, on U.S.S.G. § 2G2.1. Therefore, the prosecution sought a sentence in that range. Defendant Jacob filed a reply to the prosecution's arguments (docket no. 50 in Case No. CR 07-2017-MWB; docket no. 34 in Case No. CR 07-2002-MWB) on April 7, 2009, reiterating his request for a sentence "at or near" the mandatory minimum sentence of 120 months in this case. The prosecution then filed a Supplemental Response To Defendant's Request For Variance (docket no. 51 in Case No.

CR 07-2017-MWB; docket no. 35 in Case No. CR 07-2002-MWB) on April 9, 2009, reiterating its assertion that U.S.S.G. § 2G2.1 should not be categorically rejected and that a sentence based on that guideline was appropriate in this case.

At the sentencing hearing on April 14, 2009, the United States was represented by Assistant United States Attorney Sean Berry, and defendant Jacob was represented by Assistant Federal Defender JoAnne Lilledahl. Neither party presented any testimony, although the defendant offered Exhibits A through E, consisting of letters from family members and friends requesting leniency for defendant Jacob, and the court took note of the presence of several of defendant Jacob's family members who had traveled for several hours from Minnesota to attend the hearing in Sioux City, Iowa. The parties agreed that the only outstanding issue was defendant Jacob's request for a downward variance. After extensive argument and discussion on that issue, and defendant Jacob's allocution, I informed the parties that I was simply not ready to impose sentence that day, because there were too many competing interests, and I was not yet satisfied that I had properly evaluated all of the relevant issues. Therefore, I informed the parties that I would schedule completion of the sentencing for a later date in Cedar Rapids, Iowa, when I had other matters to attend to there.

By Order (docket no. 54 in Case No. CR 07-2017-MWB and docket no. 38 in Case No. CR 07-2002-MWB) dated May 21, 2009, I scheduled the completion of defendant Jacob's sentencing hearing for June 26, 2009, in Cedar Rapids, Iowa. At the completion of defendant Jacob's sentencing hearing, the United States was again represented by Assistant United States Attorney Sean Berry, defendant Jacob was again represented by Assistant Federal Defender JoAnne Lilledahl, the defendant was again personally present, and several members of his family again traveled for several hours from Minnesota to attend the hearing. The court found the briefing and arguments of the parties in this case

to be thorough, well-considered, and very helpful. Indeed, the court found the prosecutor in this case to be reasonable and fair-minded, meeting the public's expectations for a prosecutor committed to seeking just punishment, not always maximum punishment, for criminal defendants. *See, e.g.*, United States Department of Justice, "Mission Statement" (the mission of the United States Department of Justice is, *inter alia*, "to seek just punishment for those guilty of unlawful behavior" and "to ensure the fair and impartial administration of justice for all Americans") (published at www.usdoj.gov/ 02organizations/).

## II.  LEGAL ANALYSIS

### A.  The Methodology For Determination Of A Sentence

In *Beiermann*, I reiterated the three-step methodology for determining a defendant's sentence, consisting of determination of the guideline sentencing range; determination of whether any departure or variance is appropriate; and application of the 18 U.S.C. § 3553(a) factors to determine whether to impose a guideline or non-guideline sentence. *See Beiermann*, 599 F. Supp. 2d at 1094-95 (citing cases). I also noted that, under *Gall v. United States*, 552 U.S. 38 (2007), an appellate court may no longer require extraordinary circumstances to justify a sentence outside the advisory guideline range; that under *Kimbrough v. United States*, 552 U.S. 85 (2007), it is not an abuse of discretion for a district court to vary from the guidelines based on a policy disagreement concerning the disparity between crack and powder cocaine sentences; and that, under *Spears v. United States*, ___ U.S. ___, 129 S. Ct. 840 (2009), another crack disparity case, the district court may vary from the guidelines based on a policy or "categorical" disagreement with the guidelines, and not simply based on an individualized determination that the guidelines yield an excessive sentence in a particular case, and may adopt some other reasoned basis

for sentencing even in a "mine-run case." *Id*. at 1095-96. Thus, I read *Spears* to give the powerful implication that, in other "mine-run" situations, not just "mine-run" crack cases, the sentencing court may also reject guidelines provisions on categorical, policy grounds—particularly when those guidelines provisions do not exemplify the Sentencing Commission's exercise of its characteristic institutional role—and may, consequently, adopt some other well-reasoned basis for sentencing. *Id*. at 1096.

### B. *Application Of The Methodology In* Beiermann

Because both the parties and I have used *Beiermann* as a relevant comparator case, I find it is appropriate to spend some time reiterating the pertinent parts of my decision in *Beiermann*. Indeed, *Beiermann* provides the "bench mark" from which the parties have argued their respective positions on whether U.S.S.G. § 2G2.1 should be categorically rejected in this case, as I categorically rejected U.S.S.G. § 2G2.2 in *Beiermann*, and their respective assessments of the import of the 18 U.S.C. § 3553(a) factors and the sentence ultimately appropriate in this case.

#### 1. *Step 1*

In *Beiermann*, in the first step of the sentencing methodology, I determined that the defendant, charged with transporting and shipping child pornography in violation of 18 U.S.C. § 2252A(a)(1) and (b)(1), receiving child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A) and (b)(1), and possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2), had an adjusted offense level of 37 and criminal history category of I, with no criminal history points. This guideline calculation, pursuant to U.S.S.G. § 2G2.2, involved a two-level increase for material involving a prepubescent minor or a minor who had not attained the age of 12, § 2G2.2(b)(2); a five-level increase for an offense involving distribution for the receipt or the expectation of receipt of a thing

of value, but not for pecuniary gain, in that case, the receipt of different images of child pornography, § 2G2.2(b)(3)(B); a four-level increase for material that portrays sadistic or masochistic conduct or other depictions of violence, § 2G2.2(b)(4); a two-level increase for use of a computer or an interactive computer service to commit the offense, § 2G2.2(b)(6); and a five-level increase for an offense involving 600 or more images, § 2G2.2(b)(7)(D). *Beiermann*, 599 F. Supp. 2d at 1097-98. Thus, Beiermann's guideline sentencing range was 210 to 262 months, and his minimum mandatory sentence was 60 months. *Beiermann*, 599 F. Supp. 2d at 1098.

### 2.    *Step 2*

In the second step of the sentencing methodology in *Beiermann*, I joined several of my brethren in finding that the guideline for possessing, receiving, transporting, shipping, and soliciting child pornography, U.S.S.G. § 2G2.2, which is the result of congressional mandates, not the Commission's exercise of its institutional expertise and empirical analysis, is entitled to considerably less deference than other guidelines that are based on the Commission's exercise of its expertise and analysis. *Id.* at 1100-06. My first specific policy objection to § 2G2.2 was that it does not reflect empirical analysis, but congressional mandates that interfere with and undermine the work of the Sentencing Commission. My second policy objection was that § 2G2.2 impermissibly and illogically skews sentences for even "average" defendants to the upper end of the statutory range, regardless of the particular defendant's acceptance of responsibility, criminal history, specific conduct, or degree of culpability, thus blurring distinctions between least and worst offenders. I specifically noted that this objection was based on the imposition of level enhancements, some quite extreme, based on circumstances that appear in nearly every child pornography case:  using the internet, amassing numerous images, which is made particularly easy by the internet; the presence of video clips counted as 75 images

each; the presence of images of prepubescent minors and violence, which is broadly defined to include a prepubescent minor engaged in a sex act; and some "distributing" in return for other images. *Id.* at 1105. Furthermore, I found that I could go one step further than rejecting the application of the guideline in a particular case and, instead, could reject § 2G2.2 on categorical, policy grounds, even in a "mine-run" case. *Id.* at 1105-06.

Having rejected § 2G2.2, I proposed a reasoned, alternative basis for sentencing in cases to which that guideline would otherwise apply, based on what I found to be more appropriate grounds for distinguishing between least and worst offenders. Those more appropriate grounds involved rejection of § 2G2.2 enhancements that did not distinguish between least and worst offenders, but were instead present in nearly every case (using the internet, amassing numerous images, the presence of video clips counted as 75 images each, the presence of images of prepubescent minors and violence, which is broadly defined, and some "distributing" in return for other images). The more appropriate grounds also involved reweighing of proper considerations that I found were given excessive weight in the guideline (the "distribution" factors in § 2G2.2(b)(3), the sadistic, masochistic, or violent images factor in § 2G2.2(b)(4), and the pattern of activity factor in § 2G2.2(b)(5)). *Id.* at 1106-07. Thus, I described the reasoned alternative to the flawed guideline as requiring the sentencing judge to begin with the base offense level, which reflects the mandatory minimum sentence, U.S.S.G. § 2G2.2(a), and then to consider appropriately identified factors, such as those in § 2G2.2(b)(1), (3), (4), and (5), but to give those factors more appropriate weight in the determination of a particular defendant's sentence. *Id.* at 1107-08.

### 3. *Step 3*

At the third step of the sentencing methodology in *Beiermann*, based on my consideration of § 3553(a) factors in that case, I varied from the defendant's guideline sentencing range of 210 to 262 months downward to 90 months (half again as long as his mandatory minimum sentence of 60 months), as a sentence sufficient, but not greater than necessary, to accomplish the goals of sentencing. *Id.* at 1108-17. More specifically, in *Beiermann*, I found that an enhancement above the defendant's mandatory minimum sentence of 60 months was appropriate, because of his distribution of child pornography for the receipt or the expectation of receipt of a thing of value, but not for pecuniary gain, in that case, the receipt of different images of child pornography, and because of the presence of images portraying sadistic or masochistic conduct or other depictions of violence. I also specifically rejected the defendant's contention that he was merely a "passive" collector of images, because he repeatedly traded images, spending 3 or 4 days a week for 3 or 4 hours a day at a time, encouraged others to trade images using an Internet service specifically geared to share images, and went so far as to modify his Internet profile to suggest that he was a lesbian female, because he found that by doing so, people were more willing to trade pornography, and specifically child pornography, with him. *Id.* 1108-10 (considering the § 3553(a)(1) "nature and circumstances of the offense" factor). On the other hand, I found that a sentence nearer the mandatory minimum than the guideline range or statutory maximum was appropriate, because the defendant had no significant criminal history; there was no indication in the record of abuse of his own or other children; no prior history of sexual offenses, let alone ones involving children; and no prior offenses such as voyeurism or loitering that might be seen as precursors to more serious sexual offenses. I was also duly impressed by the show of support from his friends and family, suggesting that he was redeemable and would have significantly greater

support than usual in his efforts at rehabilitation, and the likelihood that psychosexual evaluators saw for the defendant's positive response to treatment. *Id.* at 1110-11 (considering the § 3553(a)(1) "history and characteristics of the defendant" factor).

I also found that the defendant's lack of criminal history, and low risk of reoffending, as indicated by Dr. Rypma's report in that case, suggested that a sentence near the mandatory minimum was likely to afford adequate punishment and deterrence, and also to provide adequate treatment opportunities. *Id.* at 1111-13 (considering the § 3553(a)(2) "need for the sentence imposed" factor). On the other hand, I found that some substantial period of imprisonment followed by an equally substantial or longer period of supervised release was appropriate, in light of the kinds of sentences available under the applicable statutory and guidelines provisions. *Id.* at 1114 (considering the § 3553(a)(3) and (a)(4) factors of "the kinds of sentences available" and "the kinds of sentences and sentencing range established" for similar offenses). I also found that a sentence much nearer the statutory mandatory minimum than the advisory guideline range was likely to be sufficient, but not greater than necessary, to achieve the goals of sentencing. *Id.* (considering the "parsimony provision" in § 3553(a) to be the pertinent "policy statement" for purposes of § 3553(a)(5)). Moreover, based on a small but instructive group of cases in the same geographical area, I found that avoidance of unwarranted sentencing disparities among similarly situated defendants pursuant to 18 U.S.C. § 3553(a)(6), and avoidance of unwarranted similarities among defendants who are not similarly situated, suggested a sentence for Beiermann of 90 months imprisonment and 10 years of supervised release. *Id.* at 1114-17 (considering cases that were instructive on "the need to avoid unwarranted sentencing disparities" factor in § 3553(a)(6)). Finally, I found that "restitution" was not possible. *Id.* 1117 (considering § 3553(a)(7)).

As a result, I sentenced defendant Beiermann to 90 months of incarceration followed by 10 years of supervised release as the sentence sufficient, but not greater than necessary, to serve the purposes of sentencing, thereby departing downward substantially from his advisory guideline sentencing range of 210 to 262 months, but still imposing a sentence 30 months longer than his mandatory minimum of 60 months. *Id.* at 1118.

## C. Application Of The Methodology To Jacob

The same three-step sentencing methodology is applicable here. Thus, I will again address all three steps of the sentencing methodology in defendant Jacob's case.

### 1. Step 1: Determination of the guideline range

For the first step in the three-step methodology for determining a defendant's sentence here, determination of the guideline sentencing range, *Beiermann*, 599 F. Supp. 2d at 1094-95, all guideline calculations were made using the 2006 Sentencing Guidelines and the 2006 Sentencing Table.

The parties agree, and I find, that **Counts 1** (enticement of a minor) and **2** (transporting child pornography) of the Iowa Indictment can be "grouped." However, the parties agree, and I find, that **Count 1** of the Florida Indictment cannot be "grouped" with the charges in the Iowa Indictment, because even though that charge is another "enticement" offense, it involved exploitation of a different minor. *See* U.S.S.G. § 3D1.2; U.S.S.G. § 2G1.3(D)(1) and application note 6.

The parties also agree, and I find, that, as to **Count 1** of the Iowa Indictment, the charge of "enticement of a minor" in violation of 18 U.S.C. § 2422(b), the base offense level pursuant to U.S.S.G. § 2G1.3 is 24; that, pursuant to § 2G1.3(b)(3), the base offense level should be increased two levels for an offense that involved the use of a computer or an interactive computer service to entice the minor into prohibited sexual conduct, where

the defendant believed his target to be a 15-year-old female; that, pursuant to the cross-reference to U.S.S.G. § 2G2.1 in U.S.S.G. § 2G1.3(c)(1), for an offense involving causing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, the cross-referenced guideline results in a higher base offense level of 32, so that higher base offense level pursuant to U.S.S.G. § 2G2.1(a) is applicable here, because the defendant traveled from Minnesota to Black Hawk County, Iowa, for the purpose of engaging in sexually explicit conduct with the purported minor and producing a visual depiction of the sexually explicit conduct, where the defendant was armed with a digital camera, six condoms, and a tube of personal lubricant; that a two-level increase pursuant to U.S.S.G. § 2G2.1(b)(1)(B) is applicable for an offense involving a minor who had attained the age of 12 but not yet attained the age of 16, where the defendant believed he was meeting a 15-year-old female; that another two-level increase pursuant to U.S.S.G. § 2G2.1(b)(3) is applicable, because the defendant distributed one image of child pornography to a person in Iowa that he believed to be 15 years old;[1] and that a two-level increase pursuant to U.S.S.G. § 2G2.1(b)(6)(B) is applicable for an offense involving use of a computer. Thus, the adjusted offense level for this offense is 38.

As to **Count 2** of the Iowa Indictment, which charges "transporting child pornography" in violation of 18 U.S.C. § 2252A(a)(1) and (b)(1), the parties agree, and I find, that the base offense level is 22 pursuant to U.S.S.G. § 2G2.2(a)(2); that a two-

---

[1] A further four-level increase pursuant to U.S.S.G. § 2G2.1(b)(4) is not applicable, however, because the image that the defendant sent to the supposed 15-year-old, depicting a 15-year-old female and the penis of an unidentified male does not provide sufficient information to find that the unidentified male is an adult, so that I cannot find that the image depicts sadistic or violent material.

level increase pursuant to U.S.S.G. § 2G2.2(b)(2) is applicable, because the material involved images of a prepubescent minor or a minor who had not attained the age of 12 years, because Jacob admitted that his collection contained images of children between the ages of 5 and 17 engaged in sex acts or in lascivious display of their genitals; that a five-level enhancement pursuant to U.S.S.G. § 2G2.2(b)(3) is applicable for distribution of child pornography to a minor, where defendant Jacob distributed one image of child pornography to a person he believed to be 15 years old; that a four-level enhancement pursuant to U.S.S.G. § 2G2.2(b)(4) is applicable, because the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence, where defendant Jacob possessed images and videos of prepubescent minors engaged in sexually explicit conduct with adults; that a five-level enhancement pursuant to U.S.S.G. § 2G2.2(b)(5) is applicable for a pattern of activity involving the sexual abuse or exploitation of a minor, where the defendant attempted to coerce and entice a minor in Florida and a minor in Iowa into sexually explicit conduct; that a two-level enhancement pursuant to U.S.S.G. § 2G2.2(b)(6) is applicable for use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of material, where the defendant used his computer to store and transmit images of child pornography; and, finally, that a five-level enhancement pursuant to U.S.S.G. § 2G2.2(b)(7)(D) is applicable for an offense involving 600 images or more, where forensic analysis of the defendant's computer revealed that he possessed 40 images of child pornography and at least 10 videos of child pornography, each counted as 75 images, resulting in possession of at least 790 images. Because application of U.S.S.G. § 2G2.2 results in a greater offense level than U.S.S.G. § 2G2.1, if the latter guideline were cross-reference, the cross-referenced guideline is inapplicable. Thus, the adjusted offense level for this offense

is 45, the higher offense level, and consequently, the applicable offense level, for the "group" of Iowa offenses.

Turning to the Florida "enticement" offense, the parties agree, and I find, that the base offense level pursuant to U.S.S.G. § 2G1.3(a) is, again, 24, as it was for the Iowa "enticement" offense; that a two-level enhancement pursuant to U.S.S.G. § 2G1.3(b)(3) is applicable, because the offense involved the use of a computer or an interactive computer service, but that no cross-reference to U.S.S.G. § 2G2.1 pursuant to U.S.S.G. § 2G1.3(c)(1) is applicable for this offense, as it was for the Iowa "enticement" offense, because the Florida "enticement" offense did not involve travel to meet and take pictures of the supposed 13-year old female. Thus, defendant Jacob's adjusted offense level for the Florida "enticement" offense is 26.

The guidelines calculations do not end there, however, because I must also determine the combined adjusted offense level and certain other adjustments. Specifically, the parties agree, and I find, that the combined adjusted offense level is 45, based on the greatest offense level for the offenses, which is for the Iowa "transporting child pornography" offense. The parties also agree, and I find, that defendant Jacob is entitled to both a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and a further one-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(b), bringing his total offense level down to 42. Finally, the parties agree, and I find, that a five-level enhancement for a repeat and dangerous sex offender against minors pursuant to U.S.S.G. § 4B1.5(b)(1) is applicable, because the defendant engaged in a pattern of activity by enticing both a supposed minor in Florida and a supposed minor in Iowa. Thus, defendant Jacob's total offense level is 47. The parties also agree, and I find, that defendant Jacob's criminal history category is I, with no criminal history points. The applicable 2006 Sentencing Table ends at offense level 43,

so that defendant Jacob's resulting advisory guideline sentence is life imprisonment, as compared to his statutory sentencing range of 10 years to life for the Iowa "enticement" offense and the Florida "enticement" offense and his statutory sentencing range of 5 to 20 years for the Iowa "transporting child pornography" offense.

### 2. Step 2: Determination of whether to depart or vary

Here, as in *Beiermann*, I turn next to the second step of the sentencing methodology, which involves determination of whether any departure or variance is appropriate. *Beiermann*, 599 F. Supp. 2d at 1095-96 (citing cases). As the computations explained above reveal, defendant Jacob's advisory sentencing guideline range is driven primarily by U.S.S.G. § 2G2.2. For all of the reasons that I found that § 2G2.2 should be categorically rejected, on policy grounds, in *Beiermann*, 599 F. Supp. 2d at 1100-06, I again reject that guideline on categorical, policy grounds here.

Indeed, I find that it is an indication of the way in which U.S.S.G. § 2G2.2 improperly skews sentences upward, without regard to a particular defendant's acceptance of responsibility, criminal history, specific conduct, or degree of culpability, and thus blurs distinctions between least and worst offenders, that application of that guideline here would turn the maximum sentences for the offenses charged "on their heads." Specifically, the statutory sentencing range for the "enticement" offenses is 10 years to life, and the statutory sentencing range for the "transporting child pornography offense" is 5 to 20 years. However, the advisory Sentencing Guidelines recommend a sentence of 292 to 363 months on the Iowa "enticement" offense (and 78 to 97 months on the Florida "enticement" offense), but an advisory guideline range of life imprisonment on the "transporting child pornography" offense as the result of application of U.S.S.G. § 2G2.2. Thus, a life sentence is only possible in this case, under the advisory guidelines, when the "transporting child pornography" offense is "grouped" with the Iowa "enticement"

offense, so that the crime with the lesser statutory maximum opens the door to the greater guideline sentence. Surely, this is an indication that something is, as defendant Jacob's attorney suggested, "out of whack" with the child pornography guidelines, and a further reason for categorically rejecting U.S.S.G. § 2G2.2.

I also find that application of both U.S.S.G. § 2G2.2(b)(5), which provides a five-level increase for a "pattern of activity," and U.S.S.G. § 4B1.5(b)(1), for a "pattern of activity involving sexual conduct," may not technically be "double counting," but that the resulting ten-level increase is another way in which § 2G2.2 improperly skews upward sentences in child pornography cases, either without regard to distinctions between least and worst offenders or without regard for the proper or realistic weighting of a relevant factor in such distinctions.

Returning to one of my prior policy objections to U.S.S.G. § 2G2.2, this case is an example of the way in which the enhancement for number of images in U.S.S.G. § 2G2.2(b)(7) unrealistically skews upward sentences for even "average" defendants. The five-level enhancement for more than 600 images does not appear to be based on any empirical research that would remotely pass the *Daubert* standard for admissability of evidence. In many cases, this substantial increase in a defendant's guideline range is wholly arbitrary—the difference between a defendant with 590 images and 610 images, *see* U.S.S.G. § 2G2.2(b)(7)(D), for example, escapes me, where the difference is simply a few seconds of download time. Thus, while drug quantity is often a reliable indicator of intent to distribute drugs, number of images is no such reliable indicator of the culpability of the conduct of a defendant convicted of a child pornography offense. *See United States v. Grinbergs*, 2008 WL 4191145, *10 (D. Neb. Sept. 8, 2008) ("[B]ecause of the increased ability to easily and inexpensively capture and store images with computers, the number of images does not reliably provide the distinction between

large-scale and small-scale child pornography purveyors that Congress and the Sentencing Commission envisioned when promulgating the enhancement."); *but see United States v. Hanson*, 561 F. Supp. 2d 1004, 1012 (E.D. Wis. 2008) (finding number and type of images to be aggravating factors warranting a sentence above the mandatory minimum).

I concede that an enhancement based simply on number of images might be more sensible in a case in which a defendant had amassed tens of thousands or hundreds of thousands of images, because such huge consumption clearly fuels the market for child pornography. *See, e.g., United States v. Baird*, 580 F. Supp. 2d 889, 893 (D. Neb. 2008) (stating, "Criminalizing the possession of child pornography is a necessary complement to laws banning distribution of such items, and is intended to destroy the market for exploitation of children," but recognizing that "[p]ossession is the least serious of the crimes on the continuum of conduct—from possession to distribution to production to predatory abuse—that exploits children"); *United States v. Goldberg*, 2008 WL 4542957, *5 (N.D. Ill. April 30, 2008) (downloading child pornography from the internet "does sustain a market for child pornography," but noting that "the market is unfortunately there regardless of what may happen to [a particular defendant]"); *United States v. Shipley*, 560 F. Supp. 2d 739, 743 (S.D. Iowa 2008) ("[I]ndividuals trading such images create the market for the images that resulted in the exploitation and victimization of [children].") & 745 (trading child pornography "perpetuat[es] the market for this material"). Yet, even in a case before me earlier this week in which forensic analysis of the defendant's computer showed that he had amassed 182,000 images and 806 videos of child pornography, the defendant had simply hoarded the images; there was no evidence of distribution, and his advisory guideline sentence calculation did not include any enhancement for distribution pursuant to U.S.S.G. § 2G2.2(b)(3). *See United States v. Johnson*, No. CR 08-3017-MWB (N.D. Iowa). I reiterate that the enhancement based on

number of images in U.S.S.G. § 2G2.2(b)(7), at least using the arbitrary numbers of images triggering enhancements in that guideline, is another basis for categorically rejecting U.S.S.G. § 2G2.2.

Anticipating that I would again reject U.S.S.G. § 2G2.2 on categorical, policy grounds, both parties made "alternative" advisory guideline calculations excising the U.S.S.G. § 2G2.2 enhancements, at least as the starting point for their arguments about the appropriate sentence in this case. In doing so, the parties agree, and I find, that **Count 1** of the Iowa Indictment, the Iowa "enticement" offense, rather than the Iowa "transporting child pornography" offense, would provide the highest offense level for the Iowa "group" of offenses and the highest combined adjusted offense level. More specifically, this "alternative" advisory guideline calculation begins with application of U.S.S.G. § 2G1.3(a) and the applicable enhancement pursuant to U.S.S.G. § 2G1.3(b)(3), but then requires a cross-reference to U.S.S.G. § 2G2.1 pursuant to U.S.S.G. § 2G1.3(c)(1), resulting in a base offense level of 32; a two-level enhancement pursuant to U.S.S.G. § 2G2.1(b)(1)(B) for an offense involving a minor between the ages of 12 and 16; a two level enhancement pursuant to U.S.S.G. § 2G2.1(b)(3) for distribution of child pornography to a minor; and a two-level enhancement pursuant to U.S.S.G. § 2G2.1(b)(6)(B) for use of a computer to entice a minor to engage in sexually explicit conduct for the purpose of producing sexually explicit material. These calculations result in an "alternative" adjusted offense level of 38, from which the court must still make the U.S.S.G. § 3E1.1(a) and (b) three-level reduction for acceptance of responsibility and the five-level U.S.S.G. § 4B1.5(b)(1) enhancement for repeat and dangerous sex offender against minors, resulting in an "alternative" total offense level of 40. With criminal history category I (with no criminal history points), the resulting "alternative" advisory

guideline range for defendant Jacob, using the 2006 Sentencing Table is 292 to 365 months. I will call this range "the parties' alternative guideline range."

"The parties' alternative guideline range," which is based on application of U.S.S.G. § 2G2.1, begs the question of whether that guideline suffers from the same infirmities that caused me to reject U.S.S.G. § 2G2.2 on categorical, policy grounds. The prosecution argues that it does not, but the defendant argues that it does.

The first policy ground on which I rejected U.S.S.G. § 2G2.2 in *Beiermann* was that § 2G2.2 does not reflect empirical analysis, but congressional mandates that interfere with and undermine the work of the Sentencing Commission. *Beiermann*, 599 F. Supp. 2d at 1104. The Seventh Circuit Court of Appeals recently recognized that U.S.S.G. § 2G2.1, like U.S.S.G. § 2G2.2, was not crafted pursuant to the Sentencing Commission's nationwide empirical study of criminal sentencing, but, "[i]nstead, '[m]uch like policymaking in the area of drug trafficking, Congress has used a mix of mandatory minimum penalty increases and directives to the Commission to change sentencing policy for sex offenses.'" *United States v. Huffstatler*, 561 F.3d 694, 696-97 (7th Cir. 2009) (quoting U.S. Sentencing Comm'n, *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform* 72-73 (November 2004), available at http://www.ussc.gov/15_year/ 15_year_study_full.pdf). The Seventh Circuit Court of Appeals noted that the Commission's failure to exercise its "characteristic institutional role" persuaded the Supreme Court that district courts possess the discretion to sentence below the crack guidelines based on policy disagreements in *Kimbrough*, but even if sentencing judges possess the same discretion when dealing with the child-exploitation guidelines, sentencing judges are not *required* to reject the child-exploitation guidelines. *Id.* at 697-98. While

I may not be *required* to categorically reject U.S.S.G. § 2G2.1 on this ground, consistent with my rejection of U.S.S.G. § 2G2.2 on this ground, I will do so.

The prosecution nevertheless argues that U.S.S.G. § 2G2.1 lacks the specific enhancements that caused me to reject U.S.S.G. § 2G2.2 on the ground that those enhancements improperly skewed sentences upward without regard to distinctions between least and worst offenders or a particular defendant's conduct and characteristics. In *Beiermann*, I rejected U.S.S.G. § 2G2.2, because it recommended enhancements that did not distinguish between least and worst offenders, but were instead present in nearly every case (using the internet, amassing numerous images, the presence of video clips counted as 75 images each, the presence of images of prepubescent minors and violence, which is broadly defined, and some "distributing" in return for other images), and gave excessive weight to some otherwise proper factors (the "distribution" factors in § 2G2.2(b)(3), the sadistic, masochistic, or violent images factor in § 2G2.2(b)(4), and the pattern of activity factor in § 2G2.2(b)(5)). *Beiermann*, 599 F. Supp. 2d at 1106-07. Some of these flaws are also present in U.S.S.G. § 2G2.1, which also recommends enhancements for conduct present in nearly every case to which the guideline would apply: a two- or four-level enhancement in § 2G2.1(b)(1) based on the age of the minor involved; a two-level enhancement in § 2G2.1(b)(3) if the offense involved distribution; a four-level enhancement in § 2G2.1(b)(4) if the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence, not applicable here only because of the inadequacy of proof that the male penis shown in one image with an underage female, which was distributed to the minor, could not be conclusively shown to be the penis of an adult male; and the two-level increase in § 2G2.1(b)(6)(B) for use of a computer or an interactive computer service to entice the minor. Thus, contrary to the prosecution's

contentions, U.S.S.G. § 2G2.1 has some of the same flaws that I found warranted categorical rejection of U.S.S.G. § 2G2.2.

Thus, I find that U.S.S.G. § 2G2.1 can be rejected on categorical, policy grounds. As in *Beiermann*, having rejected a particular guideline, I find that the appropriate, reasoned alternative to application of the flawed guideline is for the sentencing judge to begin with the base offense level, which reflects the mandatory minimum statutory sentence, U.S.S.G. § 2G2.2(a) or U.S.S.G. § 2G2.1(a), and then to consider appropriately identified factors, but to give those factors more appropriate weight in the determination of a particular defendant's sentence. *Beiermann*, 599 F. Supp. 2d at 1107. As I explained in *Beiermann*, such "cherry picking" and reweighing of factors from the guideline is appropriate—indeed, totally consistent with the exercise of my discretion to apply the 18 U.S.C. § 3553(a) factors—because it reflects the extent of my categorical and policy disagreement with the guideline. *Id.*

Yet, even were I not inclined to reject U.S.S.G. § 2G2.1 on categorical, policy grounds, in *every* case, I find that application of U.S.S.G. § 2G2.1 yields an excessive sentence in this case, when due consideration is given to the 18 U.S.C. § 3553(a) factors. The application of those factors, in the third step of the sentencing methodology, follows, but for purposes of the second step of the sentencing methodology, suffice it to say that I will vary downward from the guideline sentence.

### 3. Step 3: Application of § 3553(a) factors

The third step in the sentencing methodology requires the court to apply the section 3553(a) factors to determine whether to impose a guideline or non-guideline sentence. *See Beiermann*, 599 F. Supp. 2d at 1094-95 (citing cases). After balancing the § 3553(a) factors, I find that a guideline sentence of life imprisonment, or even a sentence within "the parties' alternative guideline range" of 292 to 365 months, for this defendant is well

in excess of any sentence that is "sufficient, but not greater than necessary" to accomplish the goals of sentencing.  18 U.S.C. § 3553(a).  Rather, I find that a sentence much closer to, but above, the statutory mandatory minimum of 120 months, but well below the statutory maximum of life imprisonment, is appropriate.

In considering the § 3553(a) factors, "[a] district court is not required to recite each of the sentencing factors under 18 U.S.C. § 3553(a), as long as the record makes clear that they were considered."  *United States v. Powills*, 537 F.3d 947, 950 (8th Cir. 2008) (citing *United States v. Hernandez*, 518 F.3d 613, 616 (8th Cir. 2008), and *Rita v. United States*, ___ U.S. ___, 127 S. Ct. 2456, 2468-69 (2007)).  Nevertheless, I will expressly consider each of the § 3553(a) factors in turn in this case.

### a.    The nature and circumstances of the offense

The first § 3553(a) factor requires the sentencing court to consider "the nature and circumstances of the offense."  18 U.S.C. § 3553(a)(1).  I recounted above, in some detail, the nature and circumstances of defendant Jacob's offenses.  As I noted above, factors identified in U.S.S.G. § 2G2.2 that I find are relevant to distinguish least from worst offenders (but excessively weighted in the guideline) are the "distribution" factors in § 2G2.2(b)(3); the sadistic, masochistic, or violent images factor in § 2G2.2(b)(4); and the pattern of activity factor in § 2G2.2(b)(5).  Here, the probation officer recommended, the parties did not dispute, and I found that a guideline enhancement for distribution pursuant to § 2G2.2(b)(3) and pursuant to § 2G2.1(b)(3) was applicable for an offense involving distribution to a minor, in this case, distribution of one image of child pornography to a person that the defendant believed to be 15 years old. Similarly, the probation officer recommended, the parties did not dispute, and I found that an enhancement was applicable for a "child pornography" offense involving material that portrays sadistic or masochistic conduct or other depictions of violence pursuant to

§ 2G2.2(b)(4).[2]  Finally, the probation officer recommended, the parties did not dispute, and I found that an enhancement for a pattern of activity was applicable pursuant to § 2G2.2(b)(5), although I now reiterate that I have grave reservations about how excessive the guideline enhancement is, standing alone or when used in conjunction with a "pattern of activity" enhancement pursuant to U.S.S.G. § 4B1.5(b)(1).  While I reject the extent of the enhancements based on these considerations in § 2G2.2 and § 2G2.1, I find that some enhancement of defendant Jacob's non-guideline sentence above the mandatory minimum is appropriate based on these considerations.

I note, however, that, *Beiermann* is distinguishable with regard to some of these considerations.  The defendant in *Beiermann* repeatedly traded images, spending 3 or 4 days a week for 3 or 4 hours at a time, encouraged others to trade images using an internet service specifically geared to share images, and went so far as to modify his internet profile to suggest that he was a lesbian female, because he found that by doing so, people were more willing to trade pornography, specifically, child pornography, with him.  *See Beiermann*, 599 F. Supp. 2d at 1109.  The defendant in *Beiermann* also retained images of sadistic and masochistic images, which I found suggested that the images had some value to him, at least as barter for more child pornography.  *See id.* at 1109-10.  In this case, in contrast, the defendant made relatively few forays into "chat rooms"—or at least relatively few that we know about—and amassed relatively few images, relatively few images involving sadistic or masochistic depictions, and engaged in no general distribution

---

[2]Again, I did *not* find the comparable enhancement pursuant to U.S.S.G. § 2G2.1(b)(4) to be applicable to the "enticement" offense here, because I could not find that the image that the defendant sent to the supposed 15-year-old, depicting a 15-year-old female and the penis of an unidentified male, depicted an adult male's penis, so that I could not find that it was a depiction of "violence."

or trading of child pornography to increase his collection. Under these circumstances, I find defendant Jacob's assertion that he has no interest in sadistic or masochistic images, and his contention that he has engaged in relatively little prohibited activity, much more believable, even though I find that the conduct in which defendant Jacob engaged was relatively more serious than the conduct in which the defendant in *Beiermann* engaged.

Thus, I find that the nature and circumstances of the defendant's offenses warrant some enhancement of his sentence above the applicable mandatory minimum, but nothing like his advisory guideline sentence of life imprisonment or a sentence within "the parties' alternative guideline range" of 292 to 365 months of imprisonment.

### b. The history and characteristics of the defendant

The first § 3553(a) factor also requires the court to consider "the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). I also described above, in some detail, the history and characteristics of the defendant. In this regard, I find Jacob's lack of any significant criminal history—indeed, he scored no criminal history points for his minor alcohol- and traffic-related offenses—to be substantially mitigating. Not only does he have no significant criminal history, as in *Beiermann*, there is no prior history of sexual offenses, let alone ones involving children,[3] and no prior offenses such as voyeurism or loitering that might be seen as precursors to more serious sexual offenses. *See Beiermann*, 599 F. Supp. 2d at 1110. As in *Beiermann*, I was also duly impressed by the show of support from defendant Jacob's friends and family members, most of whom

---

[3]Although defendant Jacob admits that his first sexual intercourse was with a 17-year-old female when he was 21, the age of consent in Iowa is sixteen. *See* IOWA CODE § 709.4 (defining sexual abuse in the third degree, *inter alia*, as sex with a person 12- or 13-years old, or a person 14- or 15-years old in certain specified circumstances, including that the perpetrator is four or more years older than the other person).

had been required to travel for several hours from Minnesota to Sioux City to attend the April 14, 2009, hearing. Such a show of support suggests that this defendant is redeemable and will have significantly greater support than usual in his efforts at rehabilitation. *Id.* at 1110-11. Although I found that the defendant in *Beiermann* was, albeit belatedly, realizing the damage that his offenses can do to children and have done to his own family, and I credit defendant Jacob's statements of how sorry he is for the injury done to his family, I find it troubling that Dr. Rypma indicates that defendant Jacob may suffer from intimacy deficits and that there is no evidence that he has any degree of emotional identification with children. On the other hand, I note that Dr. Rypma indicates that defendant Jacob does not suffer from any apparent paraphilias and is not likely to engage in future acts of predatory sexual violence, notwithstanding his limited social skills and uncertain support from a social network beyond his family. *Id.*

I have also carefully considered both parties' suggestions that defendant Jacob's age is the primary "mitigating" factor in his history and characteristics. Both parties suggested that the conduct in question by a person in his early twenties was less egregious, because of his lack of maturity and judgment, than the same conduct would be in a person in his fifties, for example, even if the conduct was the older person's first offense, because of the difference in age between the perpetrator and his victim and our expectations about the maturity and judgment of an older person. Playing devil's advocate, I suggested that an older person who had lived more than twice as long crime free as the present defendant might be entitled to more leniency, rather than less. In the present case, however, I conclude that the record demonstrates that defendant Jacob's conduct was the result, to a substantial extent, of immaturity, lack of judgment, and social isolation, and that his interest in a girl eight or ten years his junior, while far from acceptable, was not as bizarre in an immature male in his early twenties or necessarily indicative of deep-seated

pedophilia or predatory sexual conduct as such conduct might be for a person one could reasonably expect to have more mature judgment and social experience. It is these factors—immaturity, lack of judgment, and social isolation—rather than defendant Jacob's actual age that I ultimately find to be mitigating.

To sentence such a defendant to life imprisonment or anywhere in "the parties' alternative guideline range" of 292 to 365 months of imprisonment, would be disproportionately harsh compared to his criminal conduct and history. Rather, the defendant's history and characteristics suggest that a sentence nearer to, but above, the mandatory minimum is likely to be sufficient.

### c.    The need for the sentence imposed

The second § 3553(a) factor is "the need for the sentence imposed," § 3553(a)(2), including the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," § 3553(a)(2)(A), "to afford adequate deterrence to criminal conduct," § 3553(a)(2)(B), "to protect the public from further crimes of the defendant," § 3553(a)(2)(C), and "to provide the defendant with needed educational or vocational training" or other care or treatment, § 3553(a)(2)(D). As I noted in *Beiermann*, "even those who find that the Sentencing Guideline for child pornography offenses is flawed agree that 'child pornography is a pernicious evil.'" *See Beiermann*, 599 F. Supp. 2d at 1111 (quoting Troy Stabenow, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines* (hereinafter, Stabenow, *Deconstructing the Myth*) 31 (July 3, 2008) (available at mow.fd.org/3%20July%202008%20Edit.pdf), and citing other authorities). The same must certainly be said of offenses, at issue here, that involved attempting to entice a minor into sexually explicit conduct, either with the perpetrator or for purposes of creating images, even images that the perpetrator intended to keep to himself, not to trade or sell.

Thus, I do not hesitate to conclude that some substantial term of imprisonment is required in this case. *Id.*

As to adequate deterrence, *see* 18 U.S.C. § 3553(a)(2)(B), as I noted in *Beiermann*, 599 F. Supp. 2d at 1112, my learned colleague from the Southern District of Iowa, Chief Judge Pratt, wisely considered both "specific deterrence" of the particular defendant and "general deterrence" of other offenders who might pay any attention to any sentence imposed for a child pornography (or child exploitation) offense. *See Shipley*, 561 F. Supp. 2d at 745. As to specific deterrence, he considered the defendant's lack of criminal history and the shame that the defendant felt as mitigating the necessary term of imprisonment, while observing that the sentence imposed should be adequate to deter others, if they were capable of being deterred. *Id.* Here, I find that Jacob's lack of significant criminal history and his shame, indicated in his brief, but sincere allocution,[4] also mitigate the term of imprisonment necessary to deter him from future conduct. Yet, the term of imprisonment should be sufficiently substantial to deter others who are or might become engaged in such conduct, if such persons are capable of being deterred. *Id.* Thus, a term of imprisonment above the statutory mandatory minimum, as already suggested by other § 3553(a) factors, is also appropriate on this ground.

As to protection of the public from further crimes of this defendant, *see* 18 U.S.C. § 3553(a)(2)(C), I stated in *Beiermann* that the focus must be on the crimes the defendant actually committed, his likelihood of recidivism, and the likely protection to the public

---

[4]Specifically, defendant Jacob stated that he feels "unlimited guilt and regret" about the crimes he committed and that he hoped that, after completion of his term of imprisonment and treatment during imprisonment, he would be a different person from the one who committed the charged offenses and would be able to move forward. The court also hopes that will be the case.

afforded by an extended period of supervision after release from custody. *Beiermann*, 599 F. Supp. 2d at 1113-14. Here, Dr. Rypma opines, in part because of his understanding that defendant Jacob will be supervised upon release, that defendant Jacob does not pose a serious risk of predatory sexual violence. Thus, a life sentence pursuant to the advisory guidelines or a sentence within "the parties' alternative guideline range" is excessive to serve the factors addressed in 18 U.S.C. § 3553(a)(2).

Similarly, a sentence much nearer the mandatory minimum than the guideline range or the statutory maximum is likely to afford Jacob the necessary treatment, including sex offender treatment, that he requires and may afford him educational opportunities to improve his employability. *See* U.S.S.G. § 3553(a)(2)(D) (the court should consider the sentence necessary "to provide the defendant with needed educational or vocational training" or other care or treatment); *see also* Dr. Rypma's Risk Evaluation at 8 ("[Jacob] does however need to complete a formal [Sex Offender Treatment] program; his understanding of his offense is limited and his social skills are such that he is likely to benefit from referral to such a program.").

Therefore, I conclude that a sentence nearer the mandatory minimum than the advisory guideline range is likely to be sufficient.

### d. The kinds of sentences available and the sentencing ranges for similar offenses

The third § 3553(a) factor is "the kinds of sentences available," *see* 18 U.S.C. § 3553(a)(3), and the fourth is "the kinds of sentence and the sentencing range established" for similar offenses. 18 U.S.C. § 3553(a)(4). The applicable statutes provide for imprisonment from 10 years to life for the "enticement" offenses in the first counts of both the Iowa Indictment and the Florida Indictment, and 5 to 20 years for the "transporting child pornography" offense in the second count of the Iowa Indictment. According to the

PSIR, defendant Jacob is subject to supervised release for as long as life. As I noted in *Beiermann*, 599 F. Supp. 2d at 114, in child pornography cases, at least one court has recognized that an extended period of supervision after release from imprisonment may mitigate the need for extended imprisonment. *See, e.g., Shipley*, 560 F. Supp. 2d at 745; *but see Stern*, ___ F. Supp. 2d ___, 2008 WL 5273714 at *12 (although the court believed that future supervision would reduce the need for a prison sentence, the court still believed that publication that those who possess child pornography will be imprisoned would help reduce the demand for such material in a way that a less extreme sentence could not). I find that some substantial period of imprisonment followed by a substantial period of supervised release is appropriate in this case, in light of the kinds of sentences available under the applicable statutory and guidelines provisions.

I also provided the parties in this case with copies of the Iowa and Florida statutes defining the underlying sexual offenses defined by state law that are predicates to the federal "enticement" charges. Sexual abuse in the third degree, in violation of IOWA CODE § 709.4, is a class "C" felony, punishable by no more than 10 years of imprisonment pursuant to IOWA CODE § 902.9(4). The maximum sentence for the predicate offense under Iowa law, then, is comparable to defendant Jacob's mandatory minimum sentence for the "enticement" offenses. Lewd or lascivious offenses committed upon or in the presence of a person less than sixteen years of age, in violation of FLA. STAT. § 800.04, committed by a person 18 years or older, and promoting sexual performance by a child in violation of FLA. STAT. § 827.071(3) are both second degree felonies punishable by imprisonment not exceeding 15 years pursuant to FLA. STAT. § 775.082. I believe that these statutes should also be considered as the kinds of sentences available under applicable statutes pursuant to 18 U.S.C. § 3553(a)(3), where the state proscription of the conduct in question is a predicate to the federal crime. Similarly, I find that, pursuant to the

requirement that I consider the sentences available under applicable guidelines provisions pursuant to § 3553(a)(3), I should consider the guideline sentencing range that would be applicable after excising not only the rejected portions of U.S.S.G. § 2G2.2 but the rejected portions of U.S.S.G. § 2G2.1. The highest base offense level pursuant to those guidelines provisions is 32, pursuant to U.S.S.G. § 2G2.1(a), for the Iowa "enticement" offense. Reducing this base offense level by 3 levels for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a) and (b), and then increasing it by the Chapter 4 enhancement for a repeat and dangerous sex offender against minors pursuant to U.S.S.G. § 4B1.5(b)(1), results in an adjusted offense level of 34, which for a defendant in criminal history category I, using the 2006 Sentencing Table, would result in another "alternative" advisory guideline sentencing range of 151 to 188 months. I will call this range "the court's alternative guideline range." Thus, "the court's alternative guideline range" is comparable to the maximum sentence for the predicate offense under Florida law. Indeed, despite defendant Jacob's counsel's initial assertions in briefing that Jacob should receive a sentence "at or near" the statutory mandatory minimum, his counsel moderated her position in the course of the April 14, 2009, sentencing hearing by suggesting that a sentence from 120 to 180 months might be appropriate, in light of the statutory sentencing provisions for the predicate state-law offenses.

These factors, along with the other § 3553(a) factors considered so far, suggest to me that an appropriate sentencing range is "the court's alternative guideline range" of 151 to 188 months.

### e.    *Any pertinent policy statement*

The fifth § 3553(a) factor is "any pertinent policy statement." 18 U.S.C. § 3553(a)(5). As in *Beiermann*, I conclude that the pertinent policy statement here is that embodied in the "parsimony provision" of the federal sentencing statute, 18 U.S.C.

38

§ 3553(a), which directs me to impose a sentence that is "sufficient, but not greater than necessary" to accomplish the goals of sentencing. *Beiermann*, 599 F. Supp. 2d at 1114. Adhering to this policy, I find that a sentence much nearer the statutory mandatory minimum, and, indeed, within "the court's alternative guideline range" of 151 to 188 months, rather than the advisory guideline sentence of life or a sentence within "the parties' alternative guideline range" of 292 to 365 months, is likely to be sufficient, but not greater than necessary, to achieve the goals of sentencing.

### f.    The need to avoid unwarranted disparities

The sixth § 3553(a) factor is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). In *Beiermann*, I noted that a concomitant of this principle is the need to avoid *unwarranted similarities* among defendants who are *not* similarly situated. *See Beiermann*, 599 F. Supp. 2d at 1115-16 (citing, *e.g.*, *Gall*, 128 S. Ct. at 600, which states, "[I]t is perfectly clear that the District Judge considered the need to avoid unwarranted disparities, but also considered the need to avoid unwarranted similarities among other co-conspirators who were not similarly situated," and there was no procedural error in doing so).

In *Beiermann*, the prosecution urged me to consider the Northern District of Iowa case of *United States v. Fiorella*, No. CR 07-60-LRR (N.D. Iowa), a sentencing decision from this district by Chief Judge Linda R. Reade, in support of its contention that defendant Beiermann was not entitled to a downward variance and that U.S.S.G. § 2G2.2 was worthy of deference, and also as a case that could be used as a proper comparator. *See Beiermann*, 599 F. Supp. 2d at 1102-03 & 1115 n.10. I distinguished *Fiorella* on the basis of the conduct at issue, which I found to be considerably more egregious than defendant Beiermann's conduct, and on the basis that *Fiorella* involved application of

U.S.S.G. § 2G2.1, while defendant Beiermann's case involved only application of U.S.S.G. § 2G2.2. Although defendant Jacob's case also involves application of U.S.S.G. § 2G2.1, I have now categorically rejected that sentencing guideline and, in any event, I again find the conduct at issue in *Fiorella* was far more egregious than any conduct involved in this case, so that the *Fiorella* decision provides no real insight on the appropriate sentence in this case.[5]

Here, the prosecution urges me to take into consideration the 300-month sentence in an "enticement" case in the Southern District of Iowa affirmed in *United States v. Pierson*, 544 F.3d 933 (8th Cir. 2008). The appeal in *Pierson* did not involve the defendant's sentence or application of either U.S.S.G. § 2G2.2 or U.S.S.G. § 2G2.1. *See Pierson*, 544 F.3d at 938 (identifying the issues on appeal as sufficiency of the evidence, the admission at trial of the defendant's prior conviction for indecent contact with a child, and the defendant's eligibility for both a § 4B1.5 enhancement and the statutory mandatory minimum under 18 U.S.C. § 2251(e)). The *Pierson* case is also distinguishable on a

---

[5]In *Beiermann*, I noted that Chief Judge Reade not only rejected the reasoning of the cases finding U.S.S.G. § 2G2.2 to be entitled to little deference, but found that the defendant before her engaged in a pattern of activity involving sexual abuse and exploitation of a minor, by sexually abusing and exploiting children on at least two occasions, including taking nude, pornographic photographs of her own daughter; she found no acceptance of responsibility; she found that the defendant had obstructed justice; and she ultimately concluded that the defendant was a dangerous sexual predator of children, who had engaged in horrific and reprehensible conduct, and who also posed a high risk of reoffending. I also observed that, by any standard, the conduct of the defendant in *Fiorella* was more egregious than the conduct of the defendant in *Beiermann*, and that I could not say that, if presented with the record before Chief Judge Reade, I would have reached a different conclusion about the applicable sentence. *See Beiermann*, 599 F. Supp. 2d at 1102-03. I would make the same observations about the conduct at issue here, as compared to the conduct in *Fiorella*, and about the sentence that was appropriate in *Fiorella*.

number of factual grounds, not least of which is that the defendant, a 44-year-old man, assumed various online personae (of various ages and either gender, including a "terminally ill and love starved thirty-six year old" who was "desperately in need of the succor only sex could provide," the actor Johnny Depp, and someone who could help the purported minor obtain a modeling job) to attempt to entice the purported minor (an undercover officer) to have sex with him and sent her money to buy a webcam for her to use in a sexually explicit performance. *Id.* at 935-37. Whatever the merits of the 300-month sentence in *Pierson* might be, that case provides little insight to the appropriate sentence in this case, where the defendant did nothing to disguise his age or identity or to offer other inducements to engage in sexual activity.

Cases in which defendants have been sentenced on "enticement" offenses pursuant to U.S.S.G. § 2G2.1 have resulted in a wide range of sentences. *See, e.g., United States v. Aldrich*, 566 F.3d 976, 978 (11th Cir. 2009) (affirming a 168-month sentence pursuant to § 2G2.1 for an "enticement" offense in violation of 18 U.S.C. § 2422(b) involving masturbating for a minor female in front of the defendant's webcam); *United States v. Veazey*, 491 F.3d 700 (7th Cir. 2007) (affirming a 324-month sentence pursuant to U.S.S.G. § 2G2.1 for attempted enticement of a minor in violation of 18 U.S.C. § 2422(b) and interstate travel for the purpose of engaging in a sexual act with a minor in violation of 18 U.S.C. § 2423(b)); *United States v. Manley*, 231 Fed. Appx. 870 (11th Cir. 2007) (table op.) (affirming a 360-month sentence pursuant to § 2G2.1 for a defendant who pled guilty to "enticement" in violation of 18 U.S.C. § 2422(b), transporting child pornography in violation of 18 U.S.C. § 2252A(a)(1), and distributing child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A)); *United States v. Bohannon*, 476 F.3d 1246 (11th Cir. 2007) (affirming a 120-month sentence for "enticement" in violation of 18 U.S.C. § 2422(b), which the defendant appealed even though it was below the advisory guideline

range, on cross-reference to § 2G2.1, of 135 to 168 months); *United States v. Crayton*, 143 Fed. Appx. 77 (10th Cir. 2005) (table op.) (affirming a 108-month sentence for "enticement" in violation of 18 U.S.C. § 2422(b), because it was in the middle of the defendant's advisory guideline range pursuant to § 2G2.1, even though the sentencing court had treated the guidelines as mandatory); *see also United States v. Schafer*, 557 F.3d 440 (6th Cir. 2009) (vacating and remanding a 300-month sentence pursuant to § 2G2.1 for an "enticement" offense in violation of 18 U.S.C. § 2251(a), where the sole challenge on appeal was application of the two-level enhancement for sexual contact pursuant to § 2G2.1(b)(2)(A)); *United States v. Clowers*, 280 Fed. Appx. 496 (6th Cir. 2008) (table op.) (rejecting the defendant's "disparity" challenge to a 360-month sentence pursuant to U.S.S.G. § 2G2.1 for "enticement" in violation of 18 U.S.C. § 2251(a)); *United States v. Cunningham*, 405 F.3d 497 (7th Cir. 2005) (affirming a sentence of 210 months, the top of the guideline range pursuant to § 2G2.1, for "enticement" in violation of 18 U.S.C. § 2251). I have not found any case that involves the sentencing court's categorical rejection of § 2G2.1 or, for that matter, any § 2422(a) offense that involved circumstances sufficiently comparable to defendant Jacob's to provide reasonable guidance here.

Thus, I find that the pertinent question, for purposes of the "disparity" factor, is what sentence is appropriate to avoid disparity with other cases involving categorical rejection of U.S.S.G. § 2G2.2 or U.S.S.G. § 2G2.1? The parties and I conducted our discussion of this question primarily in terms of comparison to *Beiermann*, in which I imposed a 90-month sentence for child pornography offenses after categorically rejecting § 2G2.2. With *Beiermann* as the comparator, and the guidance provided by considering other § 3553(a) factors, I believe that a sentence of 151 to 188 months is appropriate in this case, because, on the "continuum" of child pornography and child exploitation cases, Jacob's conduct is more serious and more culpable than the conduct of the defendant in

*Beiermann*, in that it crossed the line from transporting and distributing pornography to enticing a minor to engage in sexually explicit conduct and intending both to engage in sexual conduct with the minor and to create child pornography, but is far less serious or culpable than the most egregious conduct that would constitute a violation of 18 U.S.C. § 2422(b) or 18 U.S.C. § 2252A(a)(1).

### g.    *The need to provide restitution*

The final § 3553(a) factor is "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). In *Beiermann*, I suggested that recognition of the "concept of restitution," in the form of "restitution by community service," might be appropriate in a child pornography case, citing *United States v. Stern*, 590 F. Supp. 2d 945 (N.D. Ohio 2008), at least if it is otherwise appropriate to sentence the defendant to the relatively short period of imprisonment at issue in *Stern*, 12 months and a day. However, I concluded that such recognition of the "concept of restitution" is far less practicable in a case in which any such "restitution by community service" could not commence until after the conclusion of a lengthier period of incarceration. *Beiermann*, 599 F. Supp. 2d at 1117. Once again, I find that this factor does not offer insight in this case as to the appropriate sentence.

### 4.    *Summary and concurrent sentence calculation*

As I observed, above, my rejection of U.S.S.G. § 2G2.2 and calculation of "the parties' alternative guideline range" made **Count 1** of the Iowa Indictment the offense with the highest offense level and, thus, the offense that determined the combined offense level. My rejection of U.S.S.G. § 2G2.1 does not change my belief that defendant Jacob's maximum sentence should be determined on the basis of the Iowa "enticement" offense, not least because that offense carries the highest *statutory* sentencing range. Again, "the court's alternative guideline range" for that offense is 151 to 188 months. After weighing

all of the pertinent factors, I conclude that a sentence of 151 months is appropriate in this case.

Even that range is excessive, I find, for the "child pornography" offense in **Count 2** of the Iowa Indictment, had that offense been the only offense charged. As noted above, the parties agree, and I find, that the base offense level for this offense is 22 pursuant to U.S.S.G. § 2G2.2(a)(2). Otherwise categorically rejecting U.S.S.G. § 2G2.2, reweighing enhancements that I find are appropriate, and considering the 18 U.S.C. § 3553(a) factors, I find that a total increase of four levels to that base offense level is appropriate here, considering the distribution factor properly recognized, but given excessive weight, in § 2G2.2(b)(3), and the material that portrays sadistic or masochistic conduct or other depictions of violence factor recognized, but given excessive weight, in § 2G2.2(b)(4). With adjustments downward for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a) and (b), and upward for a repeat and dangerous sex offender against minors pursuant to U.S.S.G. § 4B1.5(b)(1), I arrive at a total offense level of 28 for this offense, which, with criminal history category I, using the 2006 Sentencing Table, results in a sentence of 78 to 97 months. I will, therefore, impose a concurrent sentence of 78 months on this offense.

I also note that the advisory guideline range for the "enticement" offense in **Count 1** of the Florida Indictment, by itself, would have been less than "the court's alternative guideline range" for the Iowa "enticement" offense. Specifically, the base offense level for the Florida "enticement" offense was 24, pursuant to U.S.S.G. § 2G1.3(a), a guideline that I have not categorically rejected (nor have I been asked to do so), and even with a two-level enhancement pursuant to U.S.S.G. § 2G1.3(b)(3) for use of a computer or interactive computer service, the adjusted offense level for that offense is 26. With a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and

(b) and a five-level increase for a repeat and dangerous sex offender against minors pursuant to U.S.S.G. § 4B1.5(b)(1), the total offense level for the Florida "enticement" offense would be 28. This offense level, for a defendant in criminal history category I, results in an advisory sentencing guideline range using the 2006 Sentencing Table of 78 to 97 months, well below "the court's alternative guideline range" for the Iowa "enticement" offense and well below the sentence of 151 months that I am imposing for the Iowa offenses. However, the advisory guideline range of 78 to 97 months for the Florida "enticement" offense is also below the 10-year mandatory minimum sentence for that offense. *See* 18 U.S.C. § 2422(b). Under the circumstances of this case, I find that the sentence for the Florida "enticement" offense should be the same as the sentence for the Iowa "enticement" offense. Therefore, I will impose a concurrent sentence of 151 months for the Florida "enticement" offense.

For all of the offenses, I find that a 10-year period of supervised release is appropriate to serve the purposes of sentencing.

## III. CONCLUSION

Recognizing that Jacob has committed serious crimes, but that, for all of the reasons discussed in detail above, the applicable advisory sentencing guidelines are not reliable indicators of the Sentencing Commission's perspective on a fair sentence—and, indeed, the advisory guideline sentence must be rejected both on categorical, policy grounds, even in a "mine-run" case, and certainly must be rejected on the basis of an individualized determination in this case—I find that a sentence that is "sufficient, but not greater than necessary" to accomplish the goals of sentencing, in light of all of the pertinent factors, *see* 18 U.S.C. § 3553(a), is 151 months of incarceration followed by 10 years of supervised release for the Iowa "enticement" offense. For essentially the same reasons,

I find that a concurrent sentence of 78 months followed by 10 years of supervised release is appropriate for the Iowa "child pornography" offense, and that a concurrent sentence of 151 months followed by 10 years of supervised release is appropriate for the Florida "enticement" offense.

THEREFORE,

1.      Defendant Jacob's November 10, 2008, Request For Variance (docket no. 45 in Case No. CR 07-2017-MWB; docket no. 29 in Case No. CR 07-2002-MWB) was **granted**; and

2.      Defendant Jacob was sentenced to concurrent sentences of 151 months of incarceration followed by 10 years of supervised release on **Count 1** of the Iowa Indictment; 78 months of incarceration and 10 years of supervised release on **Count 2** of the Iowa Indictment; and 151 months of incarceration followed by 10 years of supervised release on **Count 1** of the Florida Indictment, all with such other terms and conditions as were stated at the sentencing hearing on June 26, 2009.  This Memorandum Opinion And Order Regarding Sentencing shall be attached to and incorporated by reference, in its entirety, into the Statement of Reasons and Judgment in this case.

**IT IS SO ORDERED.**

**DATED** this 26th day of June, 2009.

_Mark W. Bennett_
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA